IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LORIETTA JEAN B.,[1]     No. 3:18-cv-00067-HZ

        Plaintiff,     OPINION & ORDER

    v.

COMMISSIONER, Social Security
Administration,

        Defendant.

HERNÁNDEZ, District Judge:

    Plaintiff brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

1 - OPINION & ORDER

Because the Commissioner's decision is free of legal error and supported by substantial evidence in the record, the Court AFFIRMS the decision and DISMISSES this case.

## BACKGROUND

Plaintiff was born on April 24, 1961 and was fifty-one years old on June 27, 2012, the alleged disability onset date. Tr. 113.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through December 31, 2013. Tr. 25. Plaintiff is able to perform past relevant work as a customer service representative, order clerk, front desk receptionist, and inventory control supervisor. Tr. 42. Plaintiff claims she is disabled based on conditions including pain from a past spinal fracture, high blood pressure, and depression. Tr. 247, 260.

Plaintiff's benefits application was denied initially on April 21, 2014, and upon reconsideration on February 5, 2015. Tr. 23. A hearing was held before Administrative Law Judge Rebecca Jones on July 28, 2016. *Id.*; Tr. 49-112. ALJ Jones issued a written decision on December 12, 2016, finding that Plaintiff was not disabled or entitled to benefits. Tr. 43. The Appeals Council declined review, rendering ALJ Jones' decision the Commissioner's final decision. Tr. 1-6. The issue here is therefore whether the ALJ properly determined that Plaintiff was not disabled during the relevant time period.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 9.

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 25. At step two, the ALJ determined Plaintiff had "the following severe impairments: degenerative disc disease of the lumbar spine, status post open

reduction internal fixation at T12-L1; length dependent sensory neuropathy; and hypertension." Tr. 26. At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 30. In particular, the ALJ found that Plaintiff's physical conditions did not meet the requirements of Listing 1.04 (disorders of the spine), 4.00 (cardiovascular), or 11.14 (peripheral neuropathy). *Id.*

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform less than the full range of light work. The ALJ noted that "[t]he claimant is able to occasionally climb ladders, ropes, and scaffolds. She is able to occasionally stoop, kneel, crouch, and crawl. The claimant requires a sit/stand option, which is defined as the option to change position after 30 to 60 minutes for 3 to 5 minutes at a time while remaining on task." Tr. 30-31.

At step four, the ALJ relied on the testimony of a vocational expert to determine that Plaintiff was able to perform past relevant work as a customer service representative, order clerk, front desk receptionist, and inventory control supervisor. Tr. 42. At step five, the ALJ further found that before Plaintiff turned fifty-five on April 23, 2016, "she was capable of performing other jobs available in significant numbers in the national economy." Tr. 43.

Accordingly, the ALJ concluded that the Plaintiff was not disabled from the alleged date of disability, June 27, 2012 through the date of the decision on December 12, 2016. *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises three issues on appeal. She argues the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly rejecting the medical opinion testimony of two treating physicians; and (3) improperly categorizing the impairments in Plaintiff's hands as non-severe at step two. The Court does not agree. Because the ALJ did not err in these analyses, the Commissioner's decision is affirmed.

I. **Plaintiff's Subjective Symptom Testimony**

Plaintiff claims the ALJ improperly discounted her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quotation and citation omitted) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence

establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons"); *see also Molina*, 674 F.3d at 1112 (internal quotation marks omitted) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms."). An ALJ must include specific findings supported by substantial evidence and a clear and convincing explanation for discounting a claimant's subjective symptom testimony.

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 32. The ALJ did not identify evidence of malingering. The ALJ did, however, provide clear and convincing reasons supported by substantial evidence in the record for rejecting Plaintiff's testimony. In particular, the ALJ concluded that Plaintiff's daily activities were inconsistent with her reported symptoms, and Plaintiff was an unreliable historian based her inconsistent statements about alcohol use.

An ALJ may discount a Plaintiff's testimony when it is inconsistent with her daily activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff testified that she suffers from incapacitating, full-body pain that is "unpredictable and causes her to lie in bed for hours to days." Tr. 31, 76. She also testified that she experienced pain and burning in her feet. Tr. 31, 90. However, the ALJ noted that in September 2013, Plaintiff reported to her treatment provider that she was "not limited in physical activity and active with her boyfriend." Tr. 33, 385. More significantly, the ALJ noted that, at the time of the hearing, Plaintiff worked part time as a caregiver for an elderly man, and part time as a caregiver/dietary aid at an adult family home Tr. 31. At the adult family home, Plaintiff worked nine to ten-hour shifts, two to three times a week. *Id.* The job involved cooking, cleaning dishes, and dispensing medications. *Id.* This is significant daily activity and inconsistent with Plaintiff's reported symptoms and limitations.

An ALJ may also discount a plaintiff's testimony when the ALJ determines that plaintiff is an unreliable historian based on inconsistent statements about drug and alcohol use. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (the ALJ properly discounted claimant's testimony based in part on the fact that she had not "been a reliable historian, presenting conflicting information about her drug and alcohol usage"). Here, the ALJ identified a number of inconsistent statements made by Plaintiff about her alcohol use. For example, Plaintiff testified that she only drank to excess during a three-month period in 2013 and had only been intoxicated once during the past thirteen years. Tr. 32, 98-99. However, in 2012, Plaintiff told an emergency room doctor that she consumed twenty-one drinks per week. Tr. 41, 314. In 2014, Plaintiff told her primary care provider that she self-medicated with alcohol and consumed approximately twenty drinks per week. Tr. 33, 383. In January of 2015, Plaintiff told a neurologist that she consumed about fifteen drinks a week and had a severe problem with alcohol abuse in the past.

Tr. 41, 443. In August of 2015, Plaintiff told a psychologist that she engaged in heavy drinking in her late thirties/early forties and identified as an alcoholic. Tr. 41, 492.

Plaintiff also testified that she stopped consuming alcohol around 2015, after visiting a neurologist in January. Tr. 41, 80. However, Plaintiff's primary care provider noted that she was still drinking in August. Tr. 41, 453-54. Specifically, the doctor wrote in his treatment notes that her lower back pain could be related to binge drinking and/or dehydration. *Id.* From these inconsistencies, the ALJ concluded that Plaintiff was an unreliable reporter.[3]

The ALJ therefore provided clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's subjective symptom testimony when she concluded that Plaintiff's daily activities were inconsistent with her reported symptoms and that Plaintiff was an unreliable historian based her inconsistent statements about alcohol use.

## II. Medical Opinion Testimony

Plaintiff argues the ALJ improperly rejected the opinions of two medical sources. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

---

[3] Plaintiff also argues the ALJ improperly concluded that Plaintiff received conservative treatment and her testimony was unsupported by the objective evidence. The Court does not find these arguments persuasive. For example, Plaintiff does not explain how the identified treatments—specifically, taking pain medication, participating in physical therapy, and "rest[ing] when she is in pain and tak[ing] breaks during house chores"—are more than conservative. *See* Pl.'s Br. at 9. More importantly, the two reasons discussed above constitute sufficiently clear and convincing explanations for discounting Plaintiff's subjective symptom testimony on their own.

8 - OPINION & ORDER

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160-61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Id.* at 1161; *Orn*, 495 F.3d at 632-33. "These factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Ghanim*, 763 F.3d at 1161 (quoting 20 C.F.R. § 404.1527(c)(2)-(6)).

### 1. Kevin Carpenter, MD

Dr. Carpenter began treating Plaintiff in November 2014. He opined, in part, that Plaintiff would miss six or more days of work per month, was limited to "less than occasional[]" handling and fingering with her right hand, and could lift ten pounds only occasionally. Tr. 548-52. He

also noted that "he did not believe the limitations he described had existed since July 27, 2012 [the alleged disability onset date], indicating that he believed such limitations began November 19, 2014," the date he began treating Plaintiff. Tr. 39, 552. The ALJ gave this opinion little weight. Tr. 39. The ALJ concluded that it was inconsistent with the record as a whole and with the doctor's own treatment notes. Tr. 39-40.

The ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Carpenter's opined limitations. An ALJ may reject an opinion that is inconsistent with the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). An ALJ may also reject an opinion when it conflicts with the doctor's own treatment notes. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012)) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.").

Here, the ALJ concluded that Dr. Carpenter's opinion was unsupported by his own treatment notes and inconsistent with the record as a whole. For example, the ALJ noted that "Dr. Carpenter's treatment notes demonstrate no basis for the limitations he describes with respect to handling, fingering, and feeling." Tr. 39. Plaintiff argues that Dr. Carpenter referred Plaintiff to a rheumatologist on her very first visit. Pl.'s Br. at 5. The rheumatologist (Dr. DeLea) diagnosed Plaintiff with "finger osteoarthritis." Tr. 553. However, the Court finds nothing in Dr. Carpenter's *own* treatment records to suggest he diagnosed Plaintiff with osteoarthritis, investigated a possible diagnosis of osteoarthritis, or was even aware of another doctor's diagnosis of osteoarthritis. In fact, the only objective evidence of hand or finger impairments appears to be Dr. DeLea's reference to "mild evidence of DJD on the finger DIP joints and PIP

joints and CMC joints," tr. 475, and "bony enlargement of the fingers," tr. 553. Plaintiff cites no evidence to the contrary. While Dr. Carpenter opined that Plaintiff could only engage in "less than occasional" handling and fingering with her right hand, tr. 549, the ALJ noted that the record contains examples of mild findings at the most. Tr. 39-40, 411, 475.

Additionally, although the ALJ noted that while Dr. Carpenter stated that intermittent cane use is "medically required" for Plaintiff's ambulation, nothing in his treatment records supports such a conclusion. The Court finds no notation in the record suggesting that Dr. Carpenter ever observed Plaintiff using a cane, or instructed her to use one. In fact, the ALJ points to other evidence in the record that suggests that Plaintiff had a normal gait. Tr. 39, 445.

Lastly, while Dr. Carpenter opined that Plaintiff was severely limited in her ability to work, the ALJ concluded that Plaintiff's medical findings were no more than mild throughout the record. Tr. 39. For example, while Dr. Carpenter noted Plaintiff's complaints of dysesthesia and pain throughout his treatment records, the ALJ noted that "musculoskeletal and neurological findings [were] largely unremarkable[.]" Tr. 39. In 2014, Dr. Carpenter noted "back no CVA tenderness. Negative sciatic notch tenderness. Negative straight leg raising. Strength and reflexes appear equal and symmetric in both lower extremities. Intact light touch sensation present in both lower extremities." Tr. 391. A neurological visit in 2015 revealed only normal findings. Tr. 444-45. Plaintiff again does not identify any evidence to the contrary.

The ALJ therefore provided specific and legitimate reasons for rejecting Dr. Carpenter's opinion by identifying inconsistencies between the doctor's opinion, his own treatment notes, and the medical record as a whole.

**2. Suzanne DeLea, MD**

Dr. DeLea began treating Plaintiff in February 2015. Dr. DeLea opined, in part, that Plaintiff could sit for about four hours in an eight-hour work day and stand or walk for less than two hours in an eight-hour work day. Tr. 555. She would miss more than four days of work a month. Tr. 556. And she could use her right hand and right fingers for grasping, turning, and fingering only forty percent of the time. *Id.*

As discussed above, an ALJ may reject an opinion that is contradictory to the provider's own notes or the medical record at large. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, the ALJ gave "little weight" to Dr. DeLea's opinion because it was inconsistent with her own records, inconsistent with the medical record as a whole, and inconsistent with Plaintiff's daily activities. Tr. 40.[4] For example, while Dr. DeLea opined that Plaintiff may need to use a cane, her treatment notes do not indicate that Plaintiff either used or needed to use one. Additionally, while Dr. DeLea imposed some restrictions on Plaintiff's ability to use her hands, her treatment notes do not demonstrate a basis for these limitations. For example, at one point, she noted only "mild evidence of DJD on the finger DIP joints and PIP joints and CMC joints." Rr. 475. At another, she noted "[n]o swelling, tenderness, or warmth in … fingers [or] wrists." Tr. 484. She also did not record complaints of hand pain at every visit. *See, e.g.*, tr. 487. Other records support the ALJ's conclusion that this condition was no more than mild. Dr. Maki, for example, concluded that Plaintiff had no limitations, and observed only normal findings. Tr. 411.

An ALJ may also reject an opinion that is inconsistent with a claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ noted that at the time of the hearing, Plaintiff worked part time as a "caregiver/dietary aide in an adult family home." Tr.

---

[4] The Court notes that the ALJ appears to have applied, ver batim, the same examples she used to reject Dr. Carpenter's opinion. However, these same examples apply with equal force to Dr. DeLea's opinion.

40. Plaintiff testified that she was able to work up to ten hours a day, two to three days a week. Tr. 40. Her duties included cooking, cleaning dishes, and dispensing medication. Tr. 31. The ALJ correctly noted that these activities are inconsistent with Dr. DeLea's opinion that Plaintiff is severely limited in her ability to work.

The ALJ therefore provided specific and legitimate reasons for rejecting Dr. DeLea's opinion by identifying inconsistencies between Dr. DeLea's opinion, her own treatment notes, the medical record as a whole, and Plaintiff's activities of daily living,

### III. The ALJ's Analysis at Step Two

Plaintiff argues the ALJ erred at step two by failing to categorize her osteoarthritis of the finger as severe. Pl.'s Br. at 9. The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe, medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. *Id.*

The Ninth Circuit has explained that the severity determination at step two is expressed "in terms of what is 'not severe.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions. 20 C.F.R. §§ 404.1522(b), 416.922(b). In Social Security Ruling ("SSR") 85-28, the Commissioner explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work

activities." 1985 WL 56856, at *3, (Jan. 1, 1985) (quoting 20 C.F.R. 404.1521(a) and 416.921(a)); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) ("[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. at 153-54). "[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2, (Jan. 1, 1985) (internal quotation omitted). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). When determining the claimant's RFC, the ALJ must consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (citation omitted). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* Therefore, where the ALJ fails to list a medically determinable impairment at step two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff argues that Dr. DeLea, Plaintiff's treating rheumatologist, diagnosed Plaintiff with "osteoarthritis" and noted "bony enlargement of the fingers." Plaintiff also points out that both Dr. DeLea and Dr. Carpenter opined that Plaintiff was limited in her ability to use her hands.

"The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). As discussed above, the ALJ did not err in affording Plaintiff's treating physicians' opinions little weight. The ALJ also did not err in discounting Plaintiff's subjective symptom testimony. Moreover, the medical evidence regarding the severity of Plaintiff's hand limitations is inconsistent and ambiguous. For example, Dr. DeLea stated, in response to an inquiry from Plaintiff's counsel, that Plaintiff has "finger osteoarthritis" and opined she is limited to using her right hand and fingers forty percent of the time while working, and using her left hand and fingers seventy-five percent of the time while working. Tr. 553, 556. Her treatment notes, however, do not mention any diagnosis of "finger osteoarthritis." Rather, the notes document Plaintiff's subjective reports of pain and "mild evidence of DJD on the finger DIP joints and PIP joints and CMC joints" Tr. 40, 475. They also reveal at least one visit with "[n]o swelling, tenderness, or warmth in … fingers [or] wrists." Tr. 484. While Dr. Carpenter also opined that may Plaintiff may use her left hand and fingers "frequently," but her right hand "less than occasionally," he did not diagnose Plaintiff with finger osteoarthritis or opine that she suffers from it. Plaintiff does not identify any reference to such a diagnosis in his treatment notes. State examining physician Dr. Maki also opined that Plaintiff could hold and manipulate small objects without limit and observed no tenderness in Plaintiff's hands. Tr. 411. The ALJ considered Plaintiff's claimed impairments and reasonably interpreted these inconsistencies and ambiguities.

While the ALJ did not address Plaintiff's finger osteoarthritis in her extensive discussion of severe impairments, she did discuss and dismiss Plaintiff's finger osteoarthritis at multiple points throughout her decision. This included during her evaluation of Plaintiff's treating

physician's opinions. While Plaintiff has identified a medically determinable impairment—a bony protuberance diagnosed as finger osteoarthritis—she has not shown that this impairment limits her ability to do basic work activities, such as handling or fingering. The ALJ therefore did not err in concluding that Plaintiff's finger osteoarthritis was not severe.

## CONCLUSION

The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 8 day of Feb, 2019.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge